UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

THE BURLINGTON INSURANCE
COMPANY,

                              Plaintiff,

          v.

CESAR SALMORAN dba MAMBO'S
NIGHT CLUB; et al.,

                              Defendants.

Case No. 3:15-cv-00489-MMD-VPC

ORDER

(Pl.'s Motion for Summary Judgment –
ECF No. 20)

I.      SUMMARY

        Before the Court is Plaintiff The Burlington Insurance Company's ("Burlington")
Motion for Summary Judgment ("Motion"). (ECF No. 20.) Burlington seeks a declaratory
judgment holding that its policy's liability limit in an underlying state court action is
$25,000. Defendants Cesar Salmoran ("Salmoran") and Rosa De La Puente, Monica
Varela, and Neiry Mora ("the De La Puente Defendants") have filed separate responses
in opposition. (ECF Nos. 25, 27.) Burlington filed replies to each response. (ECF Nos.
29. 30.) Based on these documents and for the reasons discussed below, the Motion is
granted.

II.     BACKGROUND

        Cesar Salmoran owns Mambo's Night Club ("Mambo's"). Salmoran purchased
liability insurance for Mambo's from Burlington, and at all times relevant to this case
Mambo's was covered by Burlington policy No. 482BW24404 ("the Policy"). (ECF No.
20 at 6.) The Policy generally provides $1,000,000 in coverage for bodily injury and

property damage, but only offers $25,000 in coverage for liability arising out of assault and battery committed by someone other than an agent of Mambo's. (ECF No. 20-2 at 19-20; ECF No. 20-3 at 3, 15.)

On July 7, 2013, a man named Blake Maldonado was inside Mambo's when he got into an altercation with another patron. (ECF No. 20-6 at 13, 22, 25.) Both men were thrown out of the club by bouncers. Outside in the parking lot, the altercation continued. Maldonado and his brother drove through the parking lot in an SUV and continued to yell at the men they had begun fighting with inside. (*Id.* at 22.) Maldonado's brother got out of the SUV and confronted the men, who began to attack him. Maldonado, who was intoxicated, sped towards the group with his SUV, jumped a curb, and accidently struck and injured the De La Puente Defendants. (*Id.* at 13, 22.)

The De La Puente Defendants then retained counsel and sent a demand letter to Burlington seeking $1,000,000 under the Policy. (ECF No. 20-5.) Burlington responded that the Policy only provided $25,000 in coverage for their claims, and offered $25,000 in settlement. (ECF No. 20-8.) The De La Puente Defendants rejected the offer and filed suit in state court against Maldonado and Mambo's ("State Action"). (ECF No. 20-9.)

Burlington now seeks a declaration from this Court that the $25,000 limit applies to the claims the De La Puente Defendants assert against Mambo's in the State Action.

**III.   STANDARD OF REVIEW**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable

minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

IV.   **DISCUSSION**

The parties dispute the import of the insurance policy, which "is a contract between a policyholder and an insurer in which the policyholder agrees to pay

3

1    premiums in exchange for financial protection from foreseeable, yet unpreventable,

2    events." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620 (Nev. 2011). Generally,

3    insurance policies are adhesion contracts, meaning the insurer drafts the document

4    without giving the policyholder an opportunity to negotiate the terms. *Id.* at 621. "It

5    follows that 'any ambiguity or uncertainty in an insurance policy must be construed

6    against the insurer and in favor of the insured.'" *Id.* (quoting *United Nat'l Ins. Co. v.*

7    *Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004)).

8         Salmoran specifically argues that Burlington has a duty to defend. The Nevada

9    Supreme Court has described an insurer's duty to defend thusly:

10   > The duty to defend is broader than the duty to indemnify. There is no duty
     > to defend "[w]here there is no potential for coverage." In other words, "[a]n

11   > insurer . . . bears a duty to defend its insured whenever it ascertains facts
     > which give rise to the potential of liability under the policy." Once the duty

12   > to defend arises, "this duty continues throughout the course of the
     > litigation." If there is any doubt about whether the duty to defend arises,

13   > this doubt must be resolved in favor of the insured. The purpose behind
     > construing the duty to defend so broadly is to prevent an insurer from

14   > evading its obligation to provide a defense for an insured without at least
     > investigating the facts behind a complaint. However, "the duty to defend is

15   > not absolute." A potential for coverage only exists when there is arguable
     > or possible coverage. Determining whether an insurer owes a duty to

16   > defend is achieved by comparing the allegations of the complaint with the
     > terms of the policy.

17

18   *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (internal

19   citations omitted).

20        Burlington argues that the Policy unambiguously limits coverage for liability

21   arising out of an assault or battery to $25,000. Burlington further argues that there are

22   no material issues of fact regarding the application of the $25,000 limit to the claims in

23   the State Action.

24        Defendants present two arguments in opposition. First, the De La Puente

25   Defendants argue that the language of the contract does not clearly limit coverage

26   arising out of an assault and battery. Second, the De La Puente Defendants and

27   Salmoran argue that even if it does, there is a factual dispute about whether the injuries

28   ///

4

1  at issue are related to an assault or battery. As discussed below, neither argument is
2  persuasive.

3            **A.**      **The Assault and Battery Limit**

4        The De La Puente Defendants (but not Salmoran, who is a party to the contract)
5  argue that the contract language is ambiguous and must be construed in their favor.
6  They do not, however, offer an alternative reading for the Court to adopt. Instead, they
7  argue that the language is ambiguous, so it must be ignored. The language is not
8  ambiguous, and even if it were, the Court would attempt to make sense of it by adopting
9  a plausible interpretation in Defendants' favor, not pretending it did not exist.

10        In support of its contention that the Policy language is ambiguous, Defendants
11  argue that the relevant limitation is located 23 pages away from the initial section
12  discussing bodily injury and that the exclusions are "buried within the policy language …
13  disjointed" and unclear. (ECF No. 25 at 8-9.) While the Policy is indeed long,
14  complicated, poorly organized and perhaps inartful, it is not ambiguous. A contract need
15  not be drafted by Hemingway to be enforceable. The relevant provisions and their
16  relationship to one another are clear. The Policy sets out general liability coverage of
17  $1,000,000 for bodily injury and property damage for which Mambo's is found to be
18  liable. (ECF No. 25-1 at 21.) The Policy includes an exclusion which explicitly states that
19  the bodily injury and property damage coverage does not apply to liability "arising in
20  whole or in part out of any 'assault' or 'battery' committed or attempted by any person"
21  or any act or omission connected to preventing an assault or battery. (*Id.* at 56.) Lastly,
22  the Policy includes an endorsement providing limited coverage, up to $25,000, for the
23  type of liability excluded from the general bodily injury and property damage coverage
24  by the assault and battery exclusion. (*Id.* at 44.)

25        Indeed, the type of exclusion at issue in this case has been upheld and applied
26  by the Nevada Supreme Court and other courts in this district. In *Hernandez v. First Fin.*
27  ///
28  ///

*Ins. Co.*, 802 P.2d 1278, 1279 (Nev.1990), the Nevada Supreme Court upheld the application of an exclusion to a policy which stated:

> [I]nsurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The Court held the exclusion applied to claims for negligent hiring, training, or supervision where such failures result in injuries from assault or battery. *Id.* at 1280.

For these reasons, the Court finds that the assault and battery exclusion and endorsements are unambiguous.

### B.   Application of the Assault and Battery Limit to the Claims

Defendants argue that even if the language of the Policy is clear, there are factual questions about whether the exclusion and endorsement apply to the liability at issue in the underlying case.

In support of its Motion, Burlington has produced police reports from the night of the accident. (ECF No. 20-6.) The police reports indicate that Maldonado was involved in a physical altercation inside Mambo's and was escorted out of the club by Mambo's bouncers. (ECF No. 20-6 at 13.) The altercation resumed in the parking lot, where Maldonado's brother was stabbed. (*Id.*) A bouncer provided a statement explaining that the white SUV was driving around the parking lot and its occupants were taunting another group of men. A passenger got out of the SUV and began fighting with the men. The SUV then raced towards the fight and hit a number of people. (*Id.* at 22.) Maldonado himself gave a written statement to the police stating that he got into an altercation inside Mambo's, was tossed out by security, and encountered the same man he had fought with inside the bar in the parking lot. (*Id.* at 25-26.) The reports contain several more statements from witnesses which consistently explain that a fight broke out inside the club and spilled out into the parking lot. (*See id.* at 28-32.)

Burlington has also produced a demand letter sent by the De La Puente Defendants on August 20, 2014. (ECF No. 20-5.) The letter explains that Defendants

1   were injured when "a physical altercation broke out inside Mambo's night club, resulting

2   in several of the patrons inside being shoved outside into the parking lot by the

3   Mambo's security staff. This altercation continued to escalate outside in the parking lot,"

4   where Defendants were attempting to leave. (*Id.* at 1.) The letter goes on to say that

5   Mambo's is liable because "[i]nstead of kicking the warring combatants outside together

6   to continue and escalate, your insured should have taken the most rudimentary security

7   precaution of separating the groups of thugs and only allow one group to exit." (*Id.* at 2.)

8        Lastly, Burlington attached a copy of the complaint in the underlying suit. (ECF

9   No. 20-9.) The complaint lists three causes of action, all based on theories of

10  negligence, and all based on the injuries Maldonado caused by hitting the De La Puente

11  Defendants with his SUV. (*Id.* at 3-6.) The third cause of action is directed at Mambo's,

12  and alleges that Mambo's failed to prevent the fight and appropriately deal with the fight

13  once it started due to failures to train its employees. (*Id.* at 6.)

14       Defendants argue that there are material disputes of fact about whether the

15  underlying damages arose out of assault or battery. All of the Defendants argue that

16  Maldonado was never charged with assault or battery, and whether his conduct

17  amounted to assault or battery is a question of fact. (ECF Nos. 25 at 10; 27 at 8.)

18  Salmoran specifically argues the "reckless conduct" that occurred outside of the club

19  had nothing to do with the fight that started inside, and therefore the conduct that lead to

20  the injuries did not arise out of an assault or battery. (ECF No. 27 at 7.)

21       It is indisputable that Defendants' claim in the underlying case is based on

22  injuries arising from a fight that started inside Mambo's and spilled out into the parking

23  lot. Defendants use various euphemisms to refer to the fight, including: "reckless

24  conduct by harmful patrons," "a situation," and "nonreasonable conduct." (ECF Nos. 20-

25  9 at 5-6; 27 at 6.) Their choice of phrase does not change the fact that the liability in the

26  underlying suit would arise from a fight (a battery) and would not have occurred but for

27  the fight. Nor does the fact that Defendants are pursuing claims for negligence rather

28  than assault or battery help their case. The courts in this district, following the Nevada

Supreme Court's guidance in *Hernandez,* have applied assault and battery exclusions to negligence and other claims if the resulting injuries were connected to an assault or battery. *See Versatility, Inc. v. Capitol Indem. Corp.*, No. 2:10-CV-1942 JCM PAL, 2011 WL 3444187, at *3 (D. Nev. Aug. 5, 2011) (exclusion applied to negligence claim because plaintiff's alleged negligence caused the patron to suffer injuries which "arose out" of and were "causally connected" to his alleged assault and battery); *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1087 (D. Nev. 1999) (applying an assault and battery exclusions and noting that the Nevada Supreme Court has followed a policy of broad inclusive interpretation of such policies).

Finally, the fact that Maldonado was not formally charged with assault or battery, and that hitting the De La Puente Defendants with his SUV may or may not qualify as assault or battery, are inapposite. The Policy limits coverage for injuries that would not have occurred but for an assault or battery. Even if running into Defendants with his SUV does not qualify as a battery itself, Defendants cannot seriously dispute that they were hit because they were unfortunately caught in the crossfire of an ongoing altercation. But for the fight that started inside Mambo's and moved into the parking lot, Defendants would not have been injured. The theories of liability alleged in the complaint all rely on injuries that arose from assaults and batteries that began inside the nightclub and continued in the parking lot.

Therefore, the Court finds that Defendants have not identified any material disputes of fact in opposition to Burlington's Motion. The language of the Policy is unambiguous — the assault and battery coverage limit of $25,000 clearly applies to the claims asserted against Mambo's in the State Action.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion because they do not affect the outcome of Burlington's Motions.

1          It is therefore ordered that Plaintiff's Motion for Summary Judgment (ECF No. 20)

2    is granted.

3          The Clerk is ordered enter judgment in accordance with this Order and close this

4    case.

5          DATED THIS 28th day of September 2015.

6

7    _____

8         MIRANDA M. DU
          UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28